UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
TENNESSEE AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | 2:24-CR-74 |
| BRYAN SCOTT HOY, | ) ) ) | |
| Defendant. | ) ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court on the United States' Motion for Review of Release Order [Doc. 7], requesting that the order issued by Magistrate Judge Andrea K. Johnstone in the District of New Hampshire on August 12, 2024 [Doc. 4-5] in *United States v. Hoy*, No. 1:24-mj-192-AJ (D. N. H. Aug. 12, 2024) be overturned, and that Defendant be detained pending trial. The Motion was referred to the undersigned for report and recommendation by District Judge Clifton L. Corker pursuant to 28 U.S.C. § 636(b). [Doc. 8]. On September 3, 2024, the Court held a hearing on the Motion at which Assistant United States Attorney Thomas Anthony McCauley appeared on behalf of the United States along with Defendant's counsel, David L Leonard, and Defendant. For the reasons set forth herein, the Court **RECOMMENDS** that the United States' Motion [Doc. 7] be **GRANTED** and that Defendant be detained pending trial in this matter.

I.     BACKGROUND

Defendant is charged in Count One of the indictment returned against him in the Eastern District of Tennessee with knowingly employing, using, persuading, inducing, enticing, or

Case 2:24-cr-00074-DCLC-CRW    Document 21    Filed 09/06/24    Page 1 of 11
PageID #: 124

coercing a minor victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, or attempting to do so, in violation of 18 U.S.C. § 2251(a) and (c), and in Count Two with using a facility or means of interstate commerce to accomplish the acts alleged in Count 1, in violation of 8 U.S.C. § 2422(b).[1] [Doc. 5]. Defendant was arrested on these charges on August 8, 2024, in the District of New Hampshire. On the same date, Defendant had an initial appearance by Magistrate Judge Johnstone and requested a detention hearing. Because the United States requested that Defendant be detained, and the presumption in favor of detention applied, Judge Johnstone set a detention hearing for August 12, 2024.

The United States began the detention hearing by noting that the presumption in favor of detention applied. Additionally, the United States called FBI Special Agent Tarah Little, who had arrested Defendant, as a witness. [Doc. 16, p. 4-17]. Agent Little advised that in addition to arresting Defendant, she had also seized his phone pursuant to a search warrant that had been issued. *Id.* at 6-9. After seizing the phone, the FBI was able to obtain the Apple subscriber records, which confirmed that the phone was registered to Defendant, that the street address listed was a match with Defendant's residential address, and that the phone seized from Defendant had the same IMEI number as registered in the subscriber records. *Id*. Agent Little was able to further confirm Defendant's ownership of the phone through his parents, who advised that the phone she had seized was Defendant's and his mother advised that it was the only phone she knew he had. *Id.* at 9.

In analyzing Defendant's phone, the FBI discovered over two-hundred messages with, and three phone calls to, a fourteen-year-old girl living in Tennessee. [Doc. 16, p. 13-15]. Agent Little described the messages sent by Defendant as being "sexually explicit and demanding."

---

[1] Defendant was originally charged via Criminal Complaint [Doc. 3] and was brought into custody via that Complaint. By the time he appeared before this Court, he had been indicted by the Grand Jury.

*Id.* As one specific example of the types of messages being exchanged between Defendant and the fourteen-year-old, although not the most graphic, Defendant told the minor to "[g]rab that ass," to which the fourteen-year-old responded with a "photo consistent with CSAM."[2] *Id.* at 21. The fourteen-year-old victim sent two more photos during that conversation, each consistent with CSAM. *Id.* Defendant exchanged messages with this minor victim even after she informed him that she was only fourteen and told her on multiple occasions to call him "Daddy." *Id.* at 13 and 20-21.

In addition to finding on Defendant's phone the messages he had exchanged with the fourteen-year-old victim, agents also discovered messages Defendant had exchanged with a seventeen-year-old in 2022. [Doc. 16, p. 15-16]. Agent Little described the messages sent by Defendant to the seventeen-year-old victim as "demanding, domineering, vulgar, [and] sexually explicit." *Id.* at 16. Specifically, Defendant asked the seventeen-year-old to "grab her buttocks and show him," and to "digitally penetrate herself." *Id.* at 16. The messages exchanged between Defendant and this victim revealed that he was aware of her age and instructed her to call him "Daddy" as well. *Id.* at 15-16. In fact, Defendant even instructed this minor victim to save his contact in her phone under "Daddy." *Id.* at 16.

In cross examining Agent Little, defense counsel noted that on at least one occasion the fourteen-year-old had initiated a conversation with the Defendant and, without prompting from Defendant, had asked him, "Do you want to see my ass or not?" *Id.* at 32. Defense counsel further pointed out through cross examination that the photos listed as "consistent with CSAM" which had been exchanged via text between Defendant and the fourteen-year-old victim did not

---

[2] "CSAM" is a common abbreviation for the term "child sexual abuse material."

have a description of what was depicted in the actual photos and had not actually been viewed by Agent Little. *Id.* at 19.

After the proof had concluded, the United States argued that Defendant should be detained because he had been unable to rebut the presumption in favor of detention and was a danger to the community because his criminal behavior had escalated from victimizing a seventeen-year-old to victimizing a fourteen-year-old. The United States further noted that having Defendant reside with his parents would not be likely to deter his behavior because his pending charges stem from conduct he engaged in while living with them. Finally, the United States argued that Defendant presented a serious flight risk due to the serious charges he faced and his lack of ties to New Hampshire. More specifically, the United States noted that Defendant was not married, did not own a home or pay rent to his parents, worked only part-time, and while he did have children, they did not live with him.

In arguing in favor of release, defense counsel took issue with the United States' assertion that Defendant did not have sufficient ties to New Hampshire to mitigate his risk of flight. Counsel noted that Defendant lived with his parents and had his two children with him every other weekend. Defense counsel also contended that Defendant's dangerousness to the community could be addressed by living with his parents because his mother, Rory Hoy, was willing to quit her job so she could supervise Defendant fulltime. While Defendant had resided with his parents when he is alleged to have committed the offenses at issue, his mother was not in the home on a fulltime basis.

The New Hampshire Court then determined "that the Government has not met its burden as it relates both to risk of flight and dangerousness to the community." [Doc. 16, p. 38]. Judge Johnstone did specifically note that the presumption applied and classified the weight of the

evidence as strong. *Id.* at 40. Judge Johnstone further noted concern regarding Defendant's alleged alcohol and substance use, his mental health, and a civil restraining order that has previously been issued against him. *Id.* at 41-43. However, Judge Johnstone found that Defendant's family ties to the community, especially his ties to his children, and his mother's willingness to serve as a fulltime third-party custodian weighed in favor of release. *Id.* at 42. Judge Johnstone ultimately concluded that by utilizing Defendant's mother as a third-party custodian, prohibiting Defendant from possessing devices that can access the internet, and requiring any internet devices belonging to others in the home where he resides be password protected, along with other conditions of release, the safety of the community could be reasonably assured, and Defendant's risk of flight adequately mitigated. In reaching this conclusion, Judge Johnstone specifically found that "the government has not met its burden to prove by a preponderance of the evidence that there are no conditions that would assure [Defendant's] appearance and has not proven by clear and convincing evidence that there are no conditions that would reasonably assure the safety of another person or the community." *Id.* at 44. In releasing Defendant, Judge Johnstone imposed several conditions, including those referenced above and one requiring that Defendant have no contact with minors other than his own children.

In conjunction with his release, Defendant was instructed to appear in the Eastern District of Tennessee on August 15, 2024. Prior to Defendant's scheduled appearance, the United States filed a Motion for Review of Release Order [Doc. 7], in which it asked that the District of New Hampshire's decision to release Defendant be reversed and that Defendant be taken back into custody pending a review of that decision. The District Court granted the United States' request for Defendant to be taken back into custody and referred the review of the release

order to the undersigned for entry of a report and recommendation. [Doc. 8]. During Defendant's initial appearance in this district, Defendant requested that the Court delay setting a hearing to address the government's Motion to Review to allow the parties time to obtain a copy of the transcript from the hearing held in the District of New Hampshire. [Doc. 12]. On August 27, 2024, the Court was advised that the transcript was available, and a hearing was scheduled for September 3, 2024. [Doc. 14]. Prior to this hearing, the Court received Letters in Support of Defendant's Bail. [Doc. 18]. These letters were written by Defendant's sister, Ashley Hoy, Defendant's supervisor from his part-time job, Craig Richards Jr., and Defendant's friends, Greg Tucker, and Ryan Demers. [Doc. 18-1].

## II. SUMMARY OF INFORMATION OFFERED AT THE SEPTEMBER 3, 2024, HEARING

The United States primarily stood on the information which was already before the Court. In arguing that the ruling from the District of New Hampshire should be reversed, the United States contended that the court basically ignored the presumption that Defendant should be detained. Although the court mentioned the presumption, the magistrate judge did not make any statement specifically finding that it had been overcome, and the presumption was only mentioned after the magistrate judge made an initial statement that the Government had failed to meet its burden of proof. The Government further asserted that the conditions imposed upon Defendant were insufficient to prevent him from harming minors, emphasizing that even though they were supposed to be password protected from him, Defendant still had access to internet-capable devices within the residence where he would be living. The Government also argued that as his third-party custodian, Defendant's mother could not be expected to prevent him from accessing the internet given that Defendant was living with his parents when he allegedly committed the acts at issue.

As to the letters in support [Doc. 18] which had been filed by Defendant after his release but prior to this hearing, the United States asserted that rather than proving Defendant to be a person of good character, the letters illustrated that he is able to manipulate others. The Government asserted that the belief held by Defendant's friends and sister that Defendant is of good character merely shows that he can deceive those close to him, meaning that he poses an even greater threat to the community.

In contrast, defense counsel argued that while the first portion of the magistrate judge's ruling might make it appear that she applied an incorrect legal standard by ignoring the presumption, the presumption was specifically mentioned later in her ruling. Counsel also noted that the New Hampshire Court considered Defendant's interaction with both the fourteen and seventeen-year-old alleged victims. Defense counsel further pointed out that no charges were brought against Defendant based upon his messages with the seventeen-year-old. Defense counsel went on to suggest that the current conditions of release imposed on Defendant were sufficient to reasonably ensure both his appearance at future hearings and the safety of the community, noting specifically that Defendant's mother had driven Defendant from New Hampshire to Tennessee for his appearance in this district. Finally, defense counsel advised that there should be no concern about Defendant being a danger to his own children as a court had recently entered a no-contact order which prohibited Defendant from having contact with them due to Defendant's pending charges.

### III.   STANDARD OF REVIEW

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the

Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C. § 3142(g)(1)-(4).

In the instant case, because of the crimes charged a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(E). Here, the indictment provides the necessary probable cause to believe that Defendant has committed an offense in violation of 18 U.S.C § 2251(a) and (c), and in violation of 18 U.S.C. § 2422(b). *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)); *see also United States v. Foster*, No. 20-5548, 2020 WL 6791572, at * 1 (E.D. Tenn. July 20, 2020) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy the burden of production, a defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain

the defendant *de novo*.[3] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075 at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

IV. ANALYSIS

In considering whether Defendant has overcome the presumption that he should be detained, the Court notes that the bar is low to rebut the presumption. However, here there is direct evidence taken from Defendant's own phone to demonstrate that he has victimized not one, but two, minor children and has enticed them into sending him CSAM material. The proof demonstrates that Defendant was fully aware of the age of both victims while he engaged in what Agent Little aptly described as "demanding, domineering, vulgar, [and] sexually explicit" communications with them. Given that Defendant was directly engaging in the victimization of children by text and through use of the telephone, the Court cannot find that he has gotten over even the low bar necessary to overcome the presumption that he should be detained.

---

[3] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC- REW, 2017 WL 5711438, *2–3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *report and recommendation adopted by* 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Shaw*, 2017 WL 5711438. at *3.

Even if the Court could find that Defendant had overcome the presumption, it would still find that the applicable factors weigh strongly in favor of detention. The nature and circumstances of the offenses weigh in favor of detention since Defendant's victims are particularly vulnerable given their ages. 18 U.S.C. § 3142(g)(1). Defendant's actions make it clear that he has no qualms about engaging in sexually explicit conversations with a minor and it appears that his demands and actions became more aggressive over time. The weight of the evidence is also particularly strong given that much of it came from Defendant's cellular telephone, which agents were able to confirm belonged to him through multiple channels. 18 U.S.C. § 3142(g)(2).

Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," on balance, also weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A)-(B). While Defendant does have some family ties to his community of residence, those have been lessened recently because he is now prohibited from seeing his children. Further, as noted above, Defendant was living with his mother, who was chosen to serve as his third-party custodian, at the time he is alleged to have committed the charged offenses.[4] Moreover, Defendant has a history of daily alcohol use and illegal substance use as well as mental health challenges.

While all of the above are important factors to be considered, the Court's primary concern is Defendant's escalating criminal behavior. 18 U.S.C. § 3142(g)(4). As stated above, before contacting his fourteen-year-old alleged victim in 2023, Defendant had apparently victimized a

---

[4] The Court has no doubt that Defendant's mother would do her very best to ensure that he complied with his conditions of release. However, the Court cannot ignore how Defendant appears to have been able to engage in the charged conduct while living with his mother without her being aware of his activities.

seventeen-year-old in 2022. While defense counsel correctly observed that no criminal charges were brought against Defendant for his communications with the seventeen-year-old, the lack of charges does not undercut the serious nature of Defendant's actions. Defendant's contact with the fourteen-year-old victim appears to be significantly more extensive and aggressive than his contact with the seventeen-year-old victim, and his victim is significantly younger. As such, the Court finds that Defendant is a danger not only to "any person" but particularly to minors, those least capable of protecting themselves.

In summary, all four factors of 18 U.S.C. § 3142(g)(1)-(4) weigh in favor of detention. Consequently, the Court finds that the evidence and information provided at the hearing established: (1) by clear and convincing evidence that the Defendant poses a serious risk of danger to the community or another person; (2) by preponderance of the evidence that Defendant poses a risk of flight, although this is not the Court' primary concern; and (3) that no condition or combination of conditions will reasonably assure the appearance of Defendant and safety of individuals of the community if the Defendant is released on bond.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** that the United States' Motion for Review of Release Order [Doc. 7] be **GRANTED** and Defendant be detained pending trial.[5]

Respectfully submitted,

/s/ Cynthia Richardson Wyrick
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).